**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| K. P. | § | |
| Individually and on behalf of | § | |
| All Others Similarly Situated | § | |
| *Plaintiffs* | § | Civil Action No. 4:19-cv-3973 |
| | § | |
| v. | § | Jury Demanded |
| | § | |
| ALLERGAN, INC. | § | |
| ALLERGAN USA, INC., | § | |
| ALLERGAN PLC | § | |
| *Defendants* | | |

---

## CLASS ACTION COMPLAINT

---

Plaintiff K. P., (f/k/a K. L.)[1] individually and on behalf of all other similarly situated, files this Class Action Complaint against Defendants ALLERGAN, INC., ALLERGAN USA, INC. and ALLERGAN PLC (collectively "Defendants" or "Allergan") and would respectfully show as follows:

### PARTIES

1.      Plaintiff K. P. is an individual domiciled in Texas within the boundaries of the Southern District of Texas.

2.      Defendant Allergan PLC is a publicly traded foreign corporation with headquarters in at Clonshaugh Business and Technology Park, Coolock, Dublin, D17 E400, Ireland.  Allergan

---

[1] Because of the sensitive nature of the subject matter of this case, this Plaintiff has chosen to be identified in the caption and body of publicly filed papers only by her initials until the Court orders otherwise.  Pursuant to Southern District of Texas General Order No. 2004-11, a "reference list" identifying the Plaintiff will be filed herewith under seal.

has a significant presence in Texas where it employs hundreds of people in administration, manufacturing and sales, including a manufacturing facility in Houston.

3.     Defendant Allergan, Inc. (formerly known as Inamed Corporation) is a wholly owned subsidiary of Allergan PLC and is a Delaware corporation with its principal place of business in New Jersey.  It may be served with process by serving its registered agent for service of process, CT Corporation System, 1999 Bryan St #900, Dallas, Texas 75201.

4.     Defendant Allergan USA, Inc. is a wholly owned subsidiary of Allergan PLC and is a Delaware corporation with its principal place of business in New Jersey.  It may be served with process by serving its registered agent for service of process, CT Corporation System, 1999 Bryan St #900, Dallas, Texas 75201.

5.     At all relevant times, each Defendant acted in all respects as the agents and alter egos of each other.

## JURISDICTION and VENUE

6.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which:  (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs, and (3) Plaintiff and Defendants are domiciled in different states.

7.     This Court has personal jurisdiction over Defendants because they have sufficient minimum contacts in Texas to render the exercise of jurisdiction by this Court proper and fair. Allergan conducts substantial business in Texas and within this District.  Plaintiff's cause of action arises from and is directly related to the Defendant's contacts in this state—namely, Defendant markets and sells, and Plaintiff purchased the BIOCELL product in the state of Texas

and within the Southern District.  Plaintiff's injuries occurred within the state of Texas and within the Southern District.

8.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 139l(b)(2) because a substantial part of the acts giving rise to Plaintiffs claims occurred in this District and because Defendants are subject to personal jurisdiction within this District.  Venue is proper as to Defendant Allergan PLC pursuant to 28 U.S.C. § 1391(c)(3) because it is foreign corporation.

## GENERAL FACTUAL ALLEGATIONS

### (i)

9.      Allergan manufactures and sells saline and silicone filled breast implants and tissue expanders under the trade name BIOCEL.  Allergan's BIOCELL line of implants are a type of textured breast implants and tissue expanders that were introduced in the United States beginning in 2006.

10.     In 2011, the U.S. Food and Drug Administration ("FDA") identified a link between textured breast implants and a rare form of lymphoma called "breast-implant-associated anaplastic large-cell lymphoma" ("BIA-ALCL").  In December 2018 BIOCELL textured implants were banned completely from the European market.  Notwithstanding this information Defendants continued to sell BIOCELL products to women in Texas.

11.     It was not until July 24, 2019, following a request from the FDA, that Allergan issued a recall of BlOCELL textured breast implants and tissue expanders in the U.S.A.  The FDA made its request after receiving reports suggesting that BIOCELL implants and expanders were associated with hundreds of cases of BIA-ALCL around the world.  The FDA reported the risk of BIA-ALCL is six times higher with Allergan's textured implants than textured implants

from other manufacturers.  As of July 6, 2019, Medical Device Reports submitted to the FDA showed that 481 of the 573 unique cases of BIA-ALCL reported worldwide were associated with Allergan's BIOCELL implants.

12.    In most cases, BIA-ALCL is found in the scar tissue and fluid near the implant, but it can also spread through the body.  BIA-ALCL can lead to death, especially  if not treated promptly.  BIA-ALCL can be treated with surgery to remove the implant and surrounding scar tissue and may also require treatment with chemotherapy and radiation treatment.  Testing for BIA-ALCL is invasive and symptoms may occur well after the surgical incision has healed, often years after receiving the implant.

13.    BIA-ALCL typically occurs in the scar tissue surrounding the implant.  Left untreated, it will spread to surrounding tissue such as lymph nodes near the breast and may be fatal.  BIA-ALCL is typically treated with surgery meant to remove the implant and surrounding scar tissue although some patients will require chemotherapy, radiation therapy, or both.

14.    The products subject to recall ("recalled BIOCELL products") include Allergan Natrelle Saline-Filled Breast Implants, Allergan Natrelle Silicone-Filled Textured Breast Implants, Natrelle 410 Highly Cohesive Anatomically Shaped Silicone-Filled Breast Implants, and Allergan tissue expanders for the breast implants that have BIOCELL texturing.[2]

15.    Allergan has made tens of millions of dollars as a result of aggressively marketing a product which it knew or should have known was a serious health hazard to women.  As a result of Allergan's conduct Plaintiffs will be forced to expend substantial sums for surgery to remove the implants and for medical monitoring in addition to other medical and related expenses.

---

[2] A list of the specific recalled products is attached as Exhibit A.

(ii)

16.     Breast implants are medical devices that are implanted under the breast tissue or
chest muscle to supplement breast tissue or replace breast tissue that has been removed as a
result of cancer or trauma.  Tissue expanders are another medical device typically used in breast
reconstruction and are a type of inflatable breast implant whose purpose is to stretch the skin and
muscle to make room for the more permanent implant in the future.

17.     There are two primary types of breast implant products: saline-filled (containing
sterile saltwater) and silicone-filled (containing silicone gel).  They come in a variety of sizes,
have different gel viscosity, and can have either a smooth or textured surface.  Approximately
400,000 women in the United States receive breast implants each year.

18.     Breast implants were first introduced in the 1960s with little regulation.  In 1976
they became subject to minimal FDA regulation as medical devices.  Concerns about the safety
of breast implants grew in the late 1980s and early 1990s.  In response to public concern and
growing scientific scrutiny, the FDA re-classified both saline-filled and silicone-filled breast
implants as Class III devices, meaning they posed a potential unreasonable risk of illness or
injury.  In 1991, the FDA began requiring Premarket Approval Applications ("PMAs") for breast
implants.

19.     In 1992, the FDA issued a moratorium on the sale of silicone-filled breast
implants due safety concerns.  During the late 1990s and early 2000s McGhan Medical
Corporation (later Inamed Corporation) began long-term clinical studies for their silicone
implants.  In response to the health concerns brought up in the 1980s and 1990s manufacturers

including Inamed began using surface texturing on breast implants claiming they would reduce the likelihood of certain complications.

20.    In 2006 Allergan acquired Inamed Corporation partly motivated by the fact that while most of the breast implants in the United States at the time were saline implants, the FDA appeared to be on the verge of lifting the moratorium on silicone implants and Inamed Corporation was already deep into it clinical studies and also sold silicone implants outside of the United States.

20.    In 2006 the FDA lifted the moratorium on silicone implants and Allergan began selling its Inamed Silicone-Filled Breast Implants in the United States shortly thereafter.  Several years after the moratorium on silicone implants was lifted, reports and studies linking breast implants to BIA-ALCL began to emerge.  In January 2011, the FDA released a report informing the public about a possible association between breast implants and BIA- ALCL.  The FDA observed that "ALCL has been found more frequently in association with breast implants having a textured outer shell rather than a smooth outer shell."

21.    The FDA recently announced that its studies have shown that the risk of BIA-ALCL in women with textured implants ranges from between 1:3,817 and 1:30,000.  The American Society of Plastic Surgeons estimates the current risk of BIA-ALCL to be between 1:2,207 and 1:86,029 for women with textured implants.  Australia's Therapeutic Goods Administration  ("TGA") reported the risk is 1:1,000 to 1:10,000, and Studies in Europe show similar risks.

(iii)

22.     Allergan has known about the connection between its BlOCELL implants and BIA-ALCL since 2011 but Allergan did not disclose the connection to consumers or the medical community.

23.     Since April 1991, the FDA has required breast implant manufacturers to obtain premarket approval for any silicone gel-filled breast implants through the PMA process, which allows the FDA to evaluate the safety and effectiveness of Class III medical devices.

24.     As part of the PMA process, a breast implant manufacturer must provide the FDA with a variety of information including known investigations showing whether or not the device is safe and effective, the components and properties of the device, the manufacturing process and methods, and other data relevant for evaluating the safety and effectiveness of the device that is known or should reasonably be known to the manufacturer.

25.     In 2000 Inamed Corporation began conducting a 10-year study to assess the performance and safety of Saline-Filled Breast Implants.  ln 2006 Allergan began a series of long-term studies for its Inamed Silicone-Filled Breast Implants to assess the clinical performance of the breast implants, including any health complications and connections to neurological diseases, diseases in the connective tissue, and cancer.

26.     Under the relevant PMAs, the "failure  to comply with any post-approval requirement constitutes a ground for withdrawal of approval of a PMA."  The PMA also provides that it "is a violation of the act" to commercially distribute a device that is not in compliance with these conditions.

27.     Manufacturers selling medical devices in the United States are under continuing obligations to comply with the medical device reporting requirements.  Pursuant to 21 C.F.R.

§ 803.50 a manufacturer must report to the FDA within 30 calendar days of becoming aware of information from any source that reasonably suggests that a device is likely to or may have contributed to a death or serious injury. In addition, manufacturers must investigate each reported event and evaluate the cause.

28.    In addition , pursuant to 21 C.F.R. § 814.84 a manufacturer must provide periodic reports to the FDA identifying published reports in the scientific literature and unpublished reports of data from clinical investigations or laboratory studies involving the device or related devices.

29.    Allergan is required to monitor available information and clinical experiences and file adverse event reports with the FDA. The FDA publishes adverse event reports in a public, searchable database called the Manufacturer and End User Facility Device Experience database or "MAUDE" which is updated monthly.

30.    Instead of accurately reporting adverse events individually each time an injury or malfunction occurred, however, Allergan's practice was to "bury evidence of ruptures and other injuries by reporting them as routine events that did not require public disclosure." Allergan hid evidence of complications and injuries by filing "Alternative Summary Reports" ("ASR") that bypass MAUDE. ASRs were initially developed to reduce paperwork—but were not intended to be used to bypass the requirement to individually report significant or unexpected events or injuries necessitating remedial action.

31.    The evidence points to the fact that Allergan buried serious events in non-public ASRs, including cases of possible BIA-ALCL. In 2017 the FDA enforced more rigorous reporting requirements and there was a dramatic increase in the number of adverse events related to breast implant injuries—from 200 a year up to 4,567 in 2017 and 8,242 in the first half of

2018.  The FDA has now acknowledged that, until recently, there was a "transparency issue" with the injury reports it had been accepting.  The FDA said the surge in reports reflected the change in its requirements rather than new public health issues.

32.    Accurate reporting of adverse events is critical to ensure that the public is adequately and timely notified of potential problems with a medical device.  The FDA relies on the reports to monitor the safety of medical devices.  The general public, including physicians and patients, also use the MAUDE database to obtain safety information about medical devices.  Researchers, including those studying connections between breast implants and cancer and other health issues, also use the MAUDE database in their studies, such as to obtain the number of reported injuries or deaths.  By using ASRs instead of MAUDE, Allergan was able to paint a misleading picture of the number of problems in breast implants to medical professionals and their patients who relied on the public reports, thereby exposing patients to harm.

33.    Allergan also did not report adverse events from its required post-market approval studies that would have suggested the recalled BIOCELL products have caused or contributed to deaths or serious bodily injury.

34.    As detailed above, after the FDA lifted the moratorium in 2006, Allergan continually received new information showing the connection between its textured breast implants and BIA-ALCL and that the risk associated with its BIOCELL breast implants was significantly greater than its competitors.

35.    Allergan failed to comply with the conditions of the PMAs and violated federal law by failing to fulfill its obligations to accurately and promptly report adverse events and continuing to sell the recalled BIOCELL products.

36.    Had Allergan complied with its obligations under federal law, the disclosure of the connection between BIOCELL breast implants and BIA-ALCL would have allowed patients including Plaintiffs, and their treating physicians to make an informed decision regarding whether to avoid implants altogether or use different implants.

## ALLEGATIONS SPECIFIC TO THE NAMED PLAINTIFF

37.    On or about December 17, 2013, Plaintiff received one Allergan Natrelle Style 120 Silicone-Filled breast implant in each breast.  The surgery was performed in Houston, Texas.

38.    She was unaware of any dangers associated with Allergan Natrelle products. Plaintiff began experiencing general illness of unknown cause and pain, tenderness and hardness in the breast.  Subsequent medical evaluation showed an accumulation of fluid inside the breast capsule.  On or about September 5, 2019, Plaintiff had the implants surgically removed.

39.    Plaintiff would not have had the Natrelle devices implanted had she known prior to the procedure that BIOCELL textured breast implants would subject her to a significantly greater risk of developing BIA-ALCL, as well as the costs associated with removal, medical monitoring, and other fees and procedures to detect and treat BIA-ALCL.  Plaintiff experienced severe emotional distress when she learned that she is now exposed to a significantly greater risk of developing BIA-ALCL.

## CLASS ALLEGATIONS

40.    Plaintiff brings this action on her own behalf, and on behalf of the following class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or (c)(4):

> All individuals who were implanted with BIOCELL saline-filled or silicone-filled breast implants or tissue expanders that have been recalled by the FDA[3] while in the state of Texas.

---

[3] Exhibit A is a list of the recalled products which are the subject of this lawsuit.

41.    Excluded from the class are the Defendants and their subsidiaries, and officers and directors of Defendants and their subsidiaries, all class members who timely elect to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.  Plaintiff reserves the right to modify, change, or expand the class definition based on facts learned through discovery and further investigation.

42.    Numerosity—The members of the class are so numerous that joinder is impractical.  The class includes thousands of individuals.

43.    Typicality—Plaintiff's claims are typical of the claims of the class in that Plaintiff, like all class members, was implanted with recalled BIOCELL implants and faces an increased risk of BIA-ALCL in addition to the attendant consequences of having a defective device implanted in her body.

44.    Adequacy—Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests adverse to the interests of any other class member and is committed to vigorously prosecuting this case.  Plaintiff has retained competent counsel experienced in the prosecution of complex cases involving defective products.

45.    Commonality and Predominance—There are questions of law and fact common to the class, and the common questions predominate over any questions affecting only individual class members.  Among the questions common to the class are:

a.    Whether the recalled BIOCELL products significantly  increase the risk of developing BIA-ALCL;

b.    Whether Allergan knew or should have known that the recalled BIOCELL products significantly increase the risk of developing BIA-ALCL;

c.    Whether Allergan was negligent in selling BIOCELL recalled products;

d.    Whether Allergan failed to warn consumers regarding the risks of the recalled BIOCELL products;

e.    Whether Allergan violated federal standards and requirements for the marketing, warning, and reporting of the recalled BIOCELL products;

f.    Whether Allergan breached implied warranties connected with the recalled BIOCELL products;

g.    Whether Allergan was unjustly enriched by the sale of the recalled BIOCELL products;

h.    Whether Plaintiff and class members are entitled to equitable relief, including injunctive relief; and

1.    Whether Plaintiff and class members are entitled to damages or other monetary relief, and if so, in what amount.

46.    Superiority—A class action is superior to all other methods available for the fair and efficient adjudication of this controversy.  Because the amount of each individual class member's claim is small relative to the complexity of the litigation, and given Allergan's financial resources, no class member would be likely to pursue legal redress individually for the violations detailed herein.  A class action would also streamline the determination of common claims or issues in this case.  Conversely, individual suits would create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard, and allows comprehensive supervision by a single court.

47.    Injunctive Relief:  Class certification is also appropriate under Rule 23(b)(2) because Allergan acted and refused to act on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the class as a whole.

# CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Strict Liability-Failure to Warn

48.     Plaintiff incorporates the above allegations by reference.

49.     Allergan manufactured, distributed, and/or sold the BIOCELL breast implants that were implanted in Plaintiff.

50.     Allergan had a duty to warn Plaintiff and her physicians about the dangers of the recalled BIOCELL products which it knew, or in the exercise of ordinary care, should have known, at the time the recalled BIOCELL products left Allergan's control.

51.     The BIOCELL breast implants had potential risks that were known or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific and medical community at the time of the manufacture, distribution, or sale of the implant.

52.     Allergan failed to warn Plaintiff and her physicians about the serious risk of using its recalled BIOCELL products, including the greatly increased risk of BIA-ALCL.  At the time Plaintiff received her implants, Allergan was aware of the causal connection between its BIOCELL breast implants but did not disclose this information or warn of the significantly greater risk of BIA-ALCL associated with its implants.  Allergan obtained this knowledge from performing extensive decades-long clinical studies, reviewing scientific studies and literature, FDA communications, government reports, and from complaints from consumers, among other sources.  Rather than disclose the truth, Allergan, in violation of federal law, attempted to conceal the true facts by not reporting all adverse events to the FDA and by filing ASRs to avoid public reporting on MAUDE.

53.     Allergan also failed to warn Plaintiff and the public by not submitting accurate adverse event reports that patients and physicians rely on to make informed decisions about selecting the type of breast implants.

54.     The recalled BIOCELL products were defective and unreasonably dangerous when they left Allergan's possession because they did not contain adequate warnings, including the greatly increased risk of developing BIA-ALCL.  In addition, the recalled BIOCELL products were defective and unreasonably dangerous when they left Allergan's possession because they were dangerous to an extent beyond that which would be contemplated by an ordinary consumer—the risk of developing BIA-ALCL was at least six times greater than competing products-and because a reasonably prudent manufacturer or seller would not put such a dangerous product on the market.

55.     The potential risks presented a substantial danger to Plaintiff and ordinary consumers when used or misused in an intended or reasonably foreseeable way.

56.     Plaintiff and ordinary consumers would have not recognized the potential for risks.

57.     Allergan failed to adequately warn or instruct concerning the potential risks of recalled BIOCELL products.

58.     It was foreseeable to Allergan that failure to adequately warn about the risks of its recalled BIOCELL products would cause irreparable harm to those who had the products implanted in their bodies, including the types of emotional distress suffered by Plaintiff.

59.     As a result of Allergan's failure to adequately warn, Plaintiff was harmed as described herein including physical pain and emotional distress.  The lack of sufficient warnings was a substantial factor in causing Plaintiffs harm.  If Plaintiff and her physicians had been

provided with the appropriate warnings regarding the causal connection between BIOCELL

implants and BIA-ALCL, they would have been able to make an informed decision about using

an alternative product that did not present such a high risk of BIA-ALCL.

60.     Allergan's breach of its duty to warn has caused Plaintiff damages including

surgical costs of removal of the products, ongoing medical monitoring, and other medical

expenses.

SECOND CAUSE OF ACTION
Negligence

61.     Plaintiff incorporates the above allegations by reference.

62.     Allergan has a continuing duty to monitor the recalled BIOCELL products to

discover and report to the FDA any complaints about product performance and safety. Allergan

also has a continuing duty to provide warnings and instructions regarding potential safety

hazards associated with the use of its products.

63.     Allergan breached these duties by failing to provide timely and adequate reports

regarding the safety hazards associated with the recalled BIOCELL products, including the

causal connection to BIA-ALCL. Through numerous adverse reports, consumer complaints,

scientific research and literature, internal clinical research, and communications from the FDA

and international governmental organizations that Allergan monitored, Allergan was aware of

the clear connection between the recalled BIOCELL products and BIA-ALCL, and that its

textured breast implants posed a significantly greater risk than competing textured breast

implants.

64.     Although Allergan knew or should have known that the recalled BIOCELL

products posed a serious risk of bodily harm to consumers, Allergan continued to manufacture

-15-

and market them to consumers and failed to comply with applicable FDA reporting and monitoring requirements.

65.     Had Allergan properly and timely reported the adverse events to the FDA as required under federal law, material information regarding the true risk of the recalled BIOCELL products-including the substantially greater risk of developing BIA-ALCL-would have reached Plaintiff and her treating medical professionals in time to avoid her injuries.

66.     Allergan knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of its failure to exercise ordinary care and comply with FDA reporting and monitoring requirements,  including emotional distress.

67.     As a direct result of Allergan's  breach of duty, Plaintiff has suffered harm in an amount to be determined at trial, including severe emotional distress.

THIRD  CAUSE OF ACTION
Negligent Recall

68.     On July 24, 2019, the FDA requested that Allergan recall its BIOCELL products in the United States.  That same day, Allergan voluntarily issued a worldwide recall of BIOCELL products.

69.     In issuing a voluntary recall, Allergan assumed duties to Plaintiff to exercise reasonable care in issuing and implementing the recall.

70.     Allergan breached its duties by failing to adequately warn Plaintiff of the dangers associated with the use of the recalled BIOCELL products and by refusing to pay for the surgical removal of Plaintiffs implant notwithstanding the clear connection between the recalled BIOCELL products and BIA-ALCL and the continuing risk the implant poses to Plaintiffs health.

71.     As a direct result of Allergan's breach of duty, Plaintiff has suffered harm in an amount to be determined at trial.

FOURTH CAUSE OF ACTION
Breach of the Implied Warranty of Merchantability

72.     Plaintiff incorporates the above allegations by reference.

73.     By operations of law, Allergan-as manufacturer of the recalled BIOCELL products and as the provider of the Limited Warranty-impliedly warranted to Plaintiff that the implants she was receiving were of merchantable  quality and safe for their ordinary and intended use in the human body as an aesthetic breast enhancement.

74.     The recalled BIOCELL products were defective and unreasonably dangerous when they left Allergan's possession because they did not contain adequate warnings, including the greatly increased risk of developing BIA-ALCL.  In addition, the recalled BIOCELL products were defective and unreasonably dangerous when they left Allergan's possession because they were dangerous to an extent beyond that which would be contemplated by an ordinary consumer-the risk of developing BIA-ALCL was at least six times greater than competing products—and because a reasonably prudent manufacturer or seller would not put such a dangerous product on the market.

75.     Allergan breached the implied warranty of merchantability in connection with the sale and distribution of the recalled BIOCELL products.  At the point of sale, the recalled BIOCELL products—while appearing normal—contained latent flaws rendering them unsuitable and unsafe for use in the human body.

76.     Had Plaintiff known the recalled BIOCELL products are unsafe for use in the human body, she would not have had them implanted in her body.

77.     Allergan has refused to provide appropriate warranty relief, as it will not provide surgical fee assistance to patients notwithstanding the substantially increased risk of developing BIA-ALCL.  Plaintiff reasonably expected that her implants would not present a substantial risk of bodily harm at the time of their purchases.

78.     As a direct and proximate result of Allergan's breach of the implied warranty of merchantability,  Plaintiff has sustained damages in an amount to be determined at trial.


FIFTH CAUSE OF ACTION
Texas Deceptive Trade Practices Act

79.     Plaintiff incorporates the above allegations by reference.

80.     Plaintiff brings this claim pursuant to the Texas Deceptive Trade Practices Act ("DTPA") Tex. Bus. & Com. Code § 17.01 et. seq.

81.     Plaintiff is a consumer as defined by the DTPA because she is an individual who sought and acquired goods by purchase.  Defendants are corporate entities which may be sued under the DTPA.

82.     Defendants violated the DTPA by engaging in false, misleading or deceptive acts or practices that Plaintiff relied on to her detriment.

83.     Specifically, Defendants represented that the recalled BIOCELL products met particular standards or had characteristics, benefits or qualities which they do not have.  In addition, Defendants failed to disclose information concerning the recalled BIOCEL products which was known at the time Plaintiff purchased the product.

84.     As stated in more detail above, Defendants knew its BIOCELL products were defective because they greatly increased risk of BIA-ALCL.  At the time Plaintiff received her implants, Allergan was aware of the causal connection between its BIOCELL breast implants but

did not disclose this information or warn of the significantly greater risk of BIA-ALCL associated with its implants.  Instead Defendants actively marketed and sold the products stating or implying that they were safe.

85.     Defendants' failure to disclose this information was intended to induce the Plaintiff into a transaction into which she would not have entered had the information been disclosed.

86.     The Defendants are massive corporations with combined revenues in excess of $15 billion annually.  They have expended significant resources in developing and marketing BIOCELL products.  They have information regarding their products that is not available to the consumer.  Even information that has been disclosed to the FDA or medical and scientific professionals is not reasonably accessible to the consumer.  The knowledge necessary understand the mechanism of the defects in, and the dangers associated with the use of the recalled BIOCELL products is beyond the experience or capacity of consumers to fully understand.

87.     Defendants violated the DTPA by engaging in an unconscionable course of action that took advantage of Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree.

88.     As more fully stated above, Allergan breached the implied warranty of merchantability in connection with the sale and distribution of the recalled BIOCELL products. Defendants violated the DTPA when they breached the implied warranty of merchantability.

SIXTH CAUSE OF ACTION
Medical Monitoring

89.    Plaintiff incorporates the above allegations by reference.

90.    As a result of exposure to the recalled BIOCELL products, the need for future monitoring is reasonably certain.  Allergan's BIOCELL implants significantly increase the risk of BIA-ALCL.

91.    Medical monitoring is therefore reasonable in order to properly diagnose the symptoms of BIA-ALCL particularly as it can become fatal when not treated in a timely manner.

92.    Plaintiff is therefore entitled to have Allergan pay for the costs of ongoing medical monitoring.


DEMAND FOR JURY TRIAL

93.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff requests a trial by jury of all issues triable as of right.


PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests, individually and on behalf of the Class, that this Court:

A.    Certify the class under Fed. R. Civ. P. 23(a), (b)(l), (b)(2), (b)(3), and/or (c)(4), as appropriate; appoint Plaintiff as representative of the class; and appoint the undersigned counsel as class counsel;

B.    Award Plaintiff compensatory, exemplary and statutory damages in all forms which are available in law or equity;

C.    Award prejudgment and post-judgment interest as permitted by law;

D.    Enter an injunction against Allergan and its officers, agents, successors, employees, representatives,  assigns, and any and all persons acting in concert with them, to require them to implement a medical monitoring program for Plaintiff and class members;

E.      Retain jurisdiction over this action to ensure Allergan complies with such a decree;

F.      Award reasonable attorneys' fees and costs, as provided for by law; and

G.      Grant such other and further relief as the Court deems just and proper in law or in equity.


Dated: October 11, 2019


                        Respectfully submitted,


                        _____
                        W. Shawn Staples • TBN 00788457
                        wsstaples@stanleylaw.com
                        Michael J. Stanley ▪ TBN 19046600
                        mstanley@stanleylaw.com
                        Stanley Law, P.C.
                        230 Westcott St., Suite 120
                        Houston, Texas 77007
                        Tel: 713-980-4381
                        Attorneys in Charge for Plaintiff

# EXHIBIT A
# to Plaintiff's Class Action Complaint

Allergan Natrelle Saline-Filled Breast Implants  (formerly McGhan RTV Saline-Filled Mammary Implant) approved under P990074.  The following are the textured styles:

•     Style 163: BIOCELL Textured Shaped Full Height, Full Projection Saline Breast Implants

•     Style 168: BIOCELL Textured Round Moderate Profile Saline Breast Implants, also referred to as 168MP (168 Moderate Profile)

•     Style 363: BIOCELL Textured Shaped Moderate Height, Full Projection Saline Breast Implants, Allergan catalog includes 363LF, or 363 Low Height Full Projection

•     Style 468: BIOCELL Textured Shaped Full Height Moderate Projection Saline Breast Implants

Allergan Natrelle Silicone-Filled Textured Breast Implants (formerly Inamed Silicone-Filled Breast Implants) approved under P020056.  The following are the textured styles:

•     Style 110: BlOCELL Textured Round Moderate Projection Gel Filled Breast Implants

•     Style 115: BIOCELL Textured Round Midrange Projection Gel Filled Breast Implants

•     Style 120: BIOCELL Textured Round High Projection Gel Filled Breast Implants

•     Style TRL: Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

•     Style TRLP: Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

•     Style TRM: Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

•     Style TRF: Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

- Style TRX: Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

- Style TCL: Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

- Style TCLP: Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

- Style TCM: Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

- Style TCF: Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

- Style TCX: Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

- Style TSL: Natrelle BIOCELL Textured Soft Touch Silicone  Filled Breast Implants

- Style TSLP: Natrelle BIOCELL Textured Soft Touch Silicone  Filled Breast Implants

- Style TSM: Natrelle BIOCELL Textured Soft Touch Silicone  Filled Breast Implants

- Style TSF: Natrelle BIOCELL Textured Soft Touch Silicone  Filled Breast Implants

- Style TSX: Natrelle BIOCELL Textured Soft Touch Silicone- Filled Breast Implants


Natrelle 410 Highly Cohesive Anatomically Shaped Silicone Filled Breast Implants approved Under P040046. The following are the textured styles:

- Style 41OFM

- Style 410FF

- Style 41OMM

- Style 410 MF

- Style 410 FL

- Style 410 ML

- Style 410 LL

- Style 410 LM

- Style 410 LF

- Style 410 FX

- Style 410 MX

- Style 410 LX


Allergan tissue expanders for the breast that have BIOCELL texturing originally cleared as:

- Natrelle 133 Plus Tissue Expander (Kl43354)

- Natrelle 133 Tissue Expander with Suture Tabs (Kl 02806)